# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

FDIC AS RECEIVER FOR SEAWAY
BANK AND TRUST CO.,

        Plaintiff/Counter-Defendant,

        v.

URBAN PARTNERSHIP BANK,

        Defendant/Counter-Plaintiff.

Case No. 17-cv-1517

Judge John Robert Blakey

## MEMORANDUM OPINION AND ORDER

The Federal Deposit Insurance Company as Receiver for Seaway Bank and Trust Company (FDIC-R) sued Urban Partnership Bank (UPB) for the return of deposits that Seaway paid toward an unsuccessful sale of certain loans. [1-1]. The FDIC-R claims that there was no meeting of the minds between Seaway and UPB, so the sale agreement under which UPB asserts rights to the deposits never existed. *Id.* The FDIC-R seeks a declaratory judgment that UPB and Seaway never entered a binding agreement, and brings a conversion claim for UPB's continued possession of Seaway's deposits. *Id.* UPB asserts an estoppel counterclaim and affirmative defense that seek to compel the FDIC-R to uphold UPB's agreement with Seaway, as well as affirmative defenses for "failure to do equity" and "failure to state a claim." [58]. This opinion addresses the FDIC-R's motion to dismiss UPB's counterclaim and strike its affirmative defenses. [60].[1]

---

[1] The FDIC-R's present motion to dismiss, [60], incorporates by reference its earlier motion to dismiss, [20]—which this Court denied without prejudice—and its reply on that motion, [31]. This opinion addresses the arguments contained in those filings, with the exception of FDIC-R's

1

# I.  Background

This Court incorporates by reference, and presumes familiarity with, its prior opinion sustaining UPB's related third-party complaint, [67].  This Court provides additional facts relevant to UPB's counterclaim and affirmative defenses against the FDIC-R but only briefly revisits the relevant transactions, which were also alleged in the third-party complaint.

In September 2015, UPB prepared to sell the loan portfolio in an online auction and hired First Financial Network (FFN) as its loan sale adviser.  [58] ¶¶ 3–4.  From October 14, interested buyers could visit FFN's website for information about the loan portfolio, including the terms and conditions of sale.  *Id*. ¶¶ 5–7, 10. On consultation with UPB, FFN updated the terms and conditions on October 22, notifying bidders of the change.  *Id*. ¶¶ 11–12; [67] at 3.  The updated terms required bidders to submit a loan servicing plan with their bid, addressing how loan payments would be "collected and administered after the servicing transfer date" if the bidder won.  *See* [58] ¶ 13.  The terms and conditions also provided that the terms of sale in the loan sale agreement (LSA) were non-negotiable.  *Id*. ¶ 15.

FFN posted the LSA online on October 30.  *Id*. ¶ 16.  The LSA proposed a closing date of December 11, 2015, for the sale of the portfolio.  *Id*. ¶ 17.  The LSA provided that the servicing transfer date for loans *not* subject to the Real Estate Settlement Procedures Act (RESPA) was the closing date—December 11.  *Id*. ¶¶ 19–20.  The LSA's provision for RESPA loans incorporated RESPA by reference;

---

contention that UPB failed to administratively exhaust its claims pursuant to 12 U.S.C. § 1821(d); this issue has since been mooted, as stated in open court on October 4, 2017.  *See also* [53].

reading the LSA and RESPA together, UPB would transfer all RESPA loan servicing to the buyer on December 26 (15 days after the closing). *See id.* ¶¶ 21–22.

Seaway registered as a bidder around October 16. *Id.* ¶ 26. The deadline for bids was November 17. *Id.* ¶ 23. To place a bid, bidders had to submit sealed bids through the site managed by FFN, and wire an initial deposit of $100,000 to FFN's designated depository. *Id.* ¶ 24. Before the deadline, Seaway reviewed the terms and conditions on FFN's website and in the LSA; Seaway then contacted FFN to ask it to waive the requirement that Seaway submit a loan servicing plan "because Seaway is a bank." *Id.* ¶¶ 27–28. FFN granted Seaway a one-day extension, authorizing it to submit a servicing plan by November 18. *Id.* ¶ 29.

On November 17, Seaway's Chief Credit Officer submitted Seaway's bid certification to FFN; the certification acknowledged that the bidder "accepts all terms and conditions" in the relevant sale documents, including the LSA and the posted terms and conditions of sale. *Id.* ¶¶ 30–31. Seaway submitted its bid online without any contingencies or conditions. *Id.* ¶¶ 32–33. Seaway wired its initial deposit to FFN on November 17 and provided its servicing plan on November 18. *Id.* ¶¶ 35–36. Seaway's servicing plan included a one-page outline and PowerPoint slides about a third-party loan servicing provider. *Id.* ¶ 37. Seaway's servicing plan and accompanying email did not indicate that Seaway sought to alter the servicing transfer date. *See id.* ¶¶ 38–39. UPB accepted Seaway's bid on November 23, 2015, and released all other bids for the portfolio. *Id.* ¶¶ 40–41. Seaway wired its final deposits to FFN's designated depository on November 24. *Id.* ¶ 42.

On December 4, Seaway told FFN that—contrary to the provisions of the LSA—it could not service the loans until at least 120 days after the December 11 closing date. [67] at 5; [58] ¶¶ 43–36. Seaway never signed the LSA and failed to pay the balance of the purchase price on the closing date, as required by the terms and conditions, the LSA, and Seaway's bid certification. [58] ¶¶ 48–49. On December 11, UPB declared that Seaway had defaulted under the terms of the loan sale agreements. *Id.* ¶ 50. UPB had FFN transfer Seaway's deposits to UPB and inform Seaway that UPB considered it in default. *Id.* ¶¶ 50–51.

UPB relied upon Seaway's reputation, bid certification, bid submission, and issuance of deposits when it declared Seaway to be the winner of the portfolio auction and dismissed all other bidders. *Id.* ¶¶ 53–58. As a result of Seaway's failure to purchase the portfolio on December 11, UPB incurred the costs of the failed auction, and of carrying the loans for an additional period before remarketing and ultimately selling them at a lower price. *Id.* ¶ 62.

Seaway sued UPB and FFN for its deposits in January 2016, and the FDIC-R substituted as Plaintiff in February 2017. [1] at 1–2. On the same day, the FDIC-R removed the case to this district. *Id.* at 2–3. In March 2017, the FDIC-R voluntarily dismissed its claims against FFN. [7]. UPB asserts one counterclaim against the FDIC-R for equitable estoppel, and raises three affirmative defenses: equitable estoppel, failure to do equity, and failure to state a claim.[2]

---

[2] Although UPB's pleadings do not specify the type of "estoppel" that it invokes in its counterclaim and affirmative defense, the counterclaim's allegations and UPB's briefing make clear that UPB asserts a claim for equitable estoppel, which UPB's counsel confirmed in open court on April 19, 2018. *See* [58] at 44–47; [63] at 2. This Court analyzes UPB's claims accordingly.

## II.    Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted." *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). A counterclaim must meet the same standard as a complaint to survive a motion to dismiss. *See Cozzi Iron & Metal, Inc. v. U.S. Office Equip., Inc.*, 250 F.3d 570, 574 (7th Cir. 2001). Thus, it must provide a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), giving the counter-defendant "fair notice" of the claim "and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). It must state a facially plausible claim to relief, such that the alleged facts permit "the reasonable inference" that the counter-defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In evaluating a counterclaim, this Court draws all reasonable inferences in the counter-plaintiff's favor and accepts all well-pleaded allegations as true. *See id.* This Court need not, however, accept legal conclusions or conclusory allegations. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011).

A motion to dismiss under Rule 12(b)(1) challenges the basis for federal jurisdiction. On such motions, this Court also accepts well-pleaded allegations as true and construes reasonable inferences in the counter-plaintiff's favor. *See Scanlan v. Eisenberg*, 669 F.3d 838, 841 (7th Cir. 2012). But the Court may also consider other evidence submitted on the issue of jurisdiction, including matters outside the counterclaim's allegations. *See Johnson v. Apna Ghar, Inc.*, 330 F.3d

999, 1001 (7th Cir. 2003). The claimant bears the burden of proving jurisdiction. *See Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015).

Under Rule 12(f), courts may strike a party's "insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Courts rarely grant motions to strike; they are generally disfavored for their dilatory effect and frequent use as a means to make arguments beyond the page limits of the merits briefs. *See Custom Vehicles, Inc. v. Forest River, Inc.*, 464 F.3d 725, 726–27 (7th Cir. 2006). A motion to strike should succeed only when it removes "unnecessary clutter from the case," and thus expedites rather than delays resolution on the merits. *Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989). This Court will not strike affirmative defenses that are "sufficient as a matter of law" or that present genuine "questions of law or fact," but such defenses must still satisfy "all pleading requirements" of the Federal Rules. *Id.*

## III. Analysis

The FDIC-R argues that UPB's equitable counterclaim and affirmative defenses are barred by the "anti-injunction" provision of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), and that UPB's last affirmative defense for "failure to state a claim" is improper. *See* [60]; [20] at 8, 11. This Court first addresses UPB's counterclaim, followed by the equitable affirmative defenses, before turning to the failure to state a claim defense.

### A. Estoppel Counterclaim

The FDIC-R contends that FIRREA's anti-injunction provision bars UPB's equitable estoppel counterclaim. *See* [20] at 1–2. One preliminary matter requires

discussion. The FDIC-R frames FIRREA's anti-injunction provision as a jurisdictional bar, and thus brings its motion under Rule 12(b)(1) in addition to Rule 12(b)(6). *See* [20] at 1–2; [60] at 1. But the Seventh Circuit has not determined whether FIRREA deprives courts of jurisdiction over improper claims or merely restricts the relief that they may grant; thus, it remains unresolved which section of Rule 12 governs the FDIC-R's motion. *See Koppenhoefer v. F.D.I.C.*, No. 1:13-cv-01237-SLD-JEH, 2014 WL 4748490, at *3 n.3 (C.D. Ill. Sept. 24, 2014) (citing *Veluchamy v. F.D.I.C.*, 706 F.3d 810, 817 (7th Cir. 2013)).

This Court follows the precedent of district courts within this circuit, and other appellate courts, and treats the FDIC-R's motion as a jurisdictional challenge. *See Bank of Am. Nat'l Ass'n v. Colonial Bank*, 604 F.3d 1239, 1243 (11th Cir. 2010); *Sharpe v. F.D.I.C.*, 126 F.3d 1147, 1154 (9th Cir. 1997); *In re Landmark Land Co. of Okla., Inc.*, 973 F.2d 283, 290 (4th Cir. 1992); *Telematics Int'l, Inc. v. NEMLC Leasing Corp.*, 967 F.2d 703, 705 (1st Cir. 1992); *Koppenhoefer*, 2014 WL 4748490, at *3 n.3. That said, this Court finds in the alternative that because the FDIC-R raises a facial challenge to UPB's counterclaim, rather than one requiring inquiry into matters beyond the pleadings, the reasoning in this opinion applies equally under Rule 12(b)(6). *See Koppenhoefer*, 2014 WL 4748490, at *3 n.3.

### 1. FIRREA Anti-Injunction Provision

The FIRREA anti-injunction provision states: "Except as provided in this section, no court may take any action" to "restrain or affect the exercise of powers or functions" of the FDIC as receiver. 12 U.S.C. § 1821(j). The Seventh Circuit has interpreted this provision broadly to bar "any action to restrain or affect the FDIC's

exercise of its powers as a receiver, unless authorization can be found elsewhere in the section." *Courtney v. Halleran*, 485 F.3d 942, 948 (7th Cir. 2007). The exceptions authorized by § 1821 are extremely narrow and do not apply here, nor does UPB contend that they do. *See, e.g.*, § 1821(c)(7) (courts may remove the FDIC as receiver under specified circumstances); *see generally* [63]. Rather, UPB contends that because it seeks monetary relief, its equitable estoppel claim does not run afoul of § 1821(j). *See* [63] at 4, 5. This Court disagrees.

Reflecting Congress' intent to empower the FDIC-R to deal swiftly with failing financial institutions, § 1821(j) effects a "sweeping ouster of courts' power to grant equitable remedies." *Freeman v. F.D.I.C.*, 56 F.3d 1394, 1398–99 (D.C. Cir. 1995); *accord Courtney*, 485 F.3d at 948–50 (affirming district court's denial of declaratory, injunctive, and "other equitable relief" where plaintiffs failed to identify any applicable exception to § 1821(j)'s general prohibition); *Hindes v. F.D.I.C.*, 137 F.3d 148, 160 n.9 (3d Cir. 1998) (noting § 1821(j)'s "bar of equitable relief"); *Sharpe*, 126 F.3d at 1154–55; *Volges v. Resolution Tr. Corp.*, 32 F.3d 50, 52 (2d Cir. 1994) (noting that § 1821(j) "precludes equitable remedies").[3] Giving full effect to Congressional intent as reflected in the broad statutory language, courts thus interpret § 1821(j) to bar not only injunctive relief, but *any* relief that would "effectively restrain the FDIC" from taking statutorily authorized action. *Courtney*, 485 F.3d at 948–49 (internal quotation marks omitted) (citing *Freeman*, 56 F.3d at 1399; *Tri-State Hotels, Inc.*, 79 F.3d 707, 715 (8th Cir. 1996)). Accordingly,

---

[3] Here and elsewhere this Court cites precedent involving the Resolution Trust Corporation (RTC) as well as the FDIC-R because § 1821(j) applies to both entities equally, and courts rely upon cases involving the two interchangeably. *See, e.g.*, *Hindes*, 137 F.3d at 160 n.9.

equitable claims against the FDIC-R generally cannot proceed, at least where they do not fit within any of § 1821's enumerated exceptions and the FDIC-R has acted upon its statutory powers. *See id.*; *Sharpe*, 126 F.3d at 1154–55 (noting that §1821(j) "prevents courts from granting any equitable relief against the FDIC" but permitting the plaintiffs' claim to proceed because the FDIC "did not act within its statutorily granted powers").

As noted above, UPB does not invoke any statutory exception to § 1821(j)'s sweeping bar of equitable relief. *See generally* [63]. Nor does it contend that the FDIC-R's actions here are unauthorized by statute—nor could it, since the FDIC-R's suit falls squarely within its power to pursue "all rights" belonging to Seaway, including collecting "all obligations and money due the institution." *See* 12 U.S.C. §§ 1821(d)(2)(A)(i), (d)(2)(B)(ii); *Freeman*, 56 F.3d at 1398. Where the FDIC-R acts upon its statutory powers and no exception to § 1821(j) applies, courts properly deny equitable relief. *See Courtney*, 485 F.3d at 948–49, 950; *accord BKWSpokane, LLC v. F.D.I.C.*, 663 F. App'x 524, 526–27 (9th Cir. 2016) (holding that § 1821(j) barred the plaintiff's promissory estoppel and other equitable claims where the FDIC exercised its authority under FIRREA); *Bursik v. One Fourth St. N. Ltd.*, 84 F.3d 1395, 1396–97 (11th Cir. 1996) (barring the defendant's equitable counterclaims because the FDIC acted "in its capacity as receiver"); *Koppenhoefer*, 2014 WL 4748490, at *4 (holding that § 1821(j) barred a claim seeking to void an obligation to the original bank).

Accordingly, UPB's equitable estoppel counterclaim—undeniably equitable in nature, *see e.g.*, *In re Scarlett Z.-D.*, 28 N.E.2d 776, 784–85 (Ill. 2015)—is barred by the sweeping terms of § 1821(j). The mere fact that UPB seeks money damages based upon its equitable estoppel claim does not change the fundamental nature of its claim or otherwise alter this conclusion, as discussed further below.

### 2. Restraining the FDIC-R

Some courts applying § 1821(j) conduct an additional inquiry into whether granting the specific relief requested in a given case would actually restrain or affect the FDIC-R's exercise of its powers. *See Bank of Am.*, 604 F.3d at 1243; *Veluchamy*, 706 F.3d at 818; *F.D.I.C. v. OneBeacon Midwest Ins. Co.*, 883 F. Supp. 2d 754, 761 (N.D. Ill. 2012). Under this analysis, most equitable relief remains barred since it generally affects the FDIC-R's broad powers. *See Bank of Am.*, 604 F.3d at 1244 (collecting cases finding that injunctions restrain or affect the FDIC-R's powers); *Sahni*, 83 F.3d at 1058–59 (rescission of asset sales made by FDIC-R constituted improper restraint barred by § 1821(j)); *Tri-State Hotels*, 79 F.3d at 715 (rescission of purchase agreement and loan documents between the plaintiff and the failed bank would impermissibly restrain the FDIC-R's power to "collect all obligations" due the institution); *Koppenhoefer*, 2014 WL 4748490, at *4–5 (rejecting numerous claims for equitable and declaratory relief that would restrain the FDIC-R's powers to collect obligations owed to the institution).

Here, UPB's estoppel counterclaim would undoubtedly restrain the FDIC-R's exercise of its power to pursue Seaway's rights and collect its obligations. UPB frames its counterclaim as an alternative argument: if this Court eventually finds

that no enforceable agreement existed between UPB and Seaway, it should nevertheless impose an obligation upon the FDIC-R to compensate UPB for any damages arising from UPB's expectation that it would sell the loan portfolio to Seaway. *See* [58] at 46–48. UPB carefully avoids framing this relief as anything more than money damages, but equitable estoppel also restricts a party's actions; its purpose is "to preclude a party from denying a representation of past or existing fact." *Matthews v. Chi. Transit Auth.*, 51 N.E.3d 753, 780 n.11 (Ill. 2016); *see also In re Scarlett Z.-D.*, 28 N.E.2d at 785. Actions that affect the FDIC-R's ability to pursue claims and fulfill its authority and obligations as receiver run afoul of § 1821(j). *See Volges*, 32 F.3d at 53 (denying injunction preventing disposition of assets because disposition fell within functions of receiver); *Koppenhoefer*, 2014 WL 4748490, at *5 (claim attempting to "impose liability" on the FDIC-R "because of its decisions about how to pursue debt collection" constituted improper restraint); *OneBeacon*, 883 F. Supp. 2d at 763–64 (barring declaratory relief that would affect the FDIC-R's future ability to pursue claims).

UPB's requested relief would affect the FDIC-R's functions as receiver, including its ability to manage Seaway's assets and interests so as to swiftly wind down its affairs. *See Sahni*, 83 F.3d at 1058; *Freeman*, 56 F.3d at 1398. Further, FIRREA grants the FDIC-R the express right to repudiate contracts made by the institution before the FDIC-R's appointment. *See* 12 U.S.C. § 1821(e). So if this Court ultimately finds that a contract did *not* exist between Seaway and UPB, UPB's requested relief would have this Court nevertheless impose an obligation

upon the FDIC-R—compensating UPB for damages—that would not necessarily exist if this Court found that Seaway and UPB *did* form an agreement, since the FDIC-R could potentially repudiate that agreement. In short, UPB's estoppel claim draws this Court into the equitable thicket that FIRREA was intended to clear away. Nor does UPB's claim otherwise find any support in FIRREA itself. *Cf. Veluchamy*, 706 F.3d at 818–19 (holding that plaintiffs' claim seeking determination of their priority rights was not barred by § 1821(j) because FIRREA "expressly contemplates" such claims). Thus, § 1821(j) bars UPB's estoppel counterclaim.

UPB's arguments to the contrary fail to change this result. First, UPB contends that § 1821(j) does not apply to equitable claims that seek monetary relief. *See* [63] at 1–2, 5. True, UPB seeks money damages for its counterclaim, which Illinois law permits. *See* [58] at 48; *Gold v. Dubish*, 549 N.E.2d 660, 666 (Ill. App. Ct. 1989). But, as noted above, an equitable estoppel claim still requires this Court to exercise its equitable powers—here, by holding the FDIC-R to Seaway's representations. *See, e.g.*, *Matthews*, 51 N.E.2d at 780 n.11. Moreover, as noted above, UPB's requested relief significantly affects the FDIC-R's exercise of its authority as receiver. The few courts that have permitted an "equitable" claim to proceed have done so only after expressly finding that the relief sought would not "cabin" the FDIC-R's "broad discretion" or otherwise restrain it. *Saleh v. Merchant*, No. 14-cv-09186, 2017 WL 1478000, at *4 (N.D. Ill. Apr. 25, 2017) (permitting quantum meruit and equitable subordination claims that sought only "monetary sums"); *see also Veluchamy*, 706 F.3d at 818 (finding that determining plaintiffs'

priority rights did not affect FDIC-R's powers, "at least in this case"). Such precedents do not apply to UPB's claim.

Second, UPB contends that because it has now exhausted its counterclaim through the FDIC-R's administrative claims process—as required by § 1821(d)—its claim has become exempt from § 1821(j). [63] at 4–5. This argument defies the plain language of § 1821 and distorts the Seventh Circuit's opinion in *Veluchamy*, 706 F.3d 810.

FIRREA requires "anyone bringing a claim against or seeking a determination of rights with respect to the assets of a failed bank" held by the FDIC-R to first exhaust their administrative remedies by filing a claim through a process set out in § 1821(d). *Freeman*, 56 F.3d at 1400 (internal quotation marks omitted). Here, UPB places undue emphasis on the Seventh Circuit's comment that when the FDIC-R has addressed a claim through the § 1821(d) process, "the judicial resolution of that claim expressly permitted" by § 1821(d) "should not typically run afoul" of § 1821(j). *Id*. at 818. Far from indicating that § 1821(d) provides an exception to § 1821(j)—which the plain language of the statute and *Veluchamy*'s reasoning do not support—the Seventh Circuit simply invoked cases expressing the uncontroversial conclusion that most claims raised under § 1821(d) will face no obstacle under § 1821(j), which does not bar claims for money damages or various types of declaratory relief. *See id*. at 818 (citing *Freeman*, 56 F.3d at 1399 (noting that parties can seek "money damages or other relief" under § 1821(d), without holding that doing so moots § 1821(j)); *Bank of Am.*, 604 F.3d at 1246 (holding that

13

the plaintiff's claim remained subject to § 1821(d)'s exhaustion requirement and noting in that context that that "all manner of claims" may be addressed by the § 1821(d) process, without holding that § 1821(d) provides an exception to § 1821(j))).[4]

More to the point, the *Veluchamy* court addressed a claim that had passed through FIRREA's administrative claims process pursuant to § 1821(d)—*and analyzed that claim for compliance with § 1821(j). See Veluchamy*, 706 F.3d at 818–19. Thus, *Veluchamy* supports the rule—clear from the face of the statute—that claims raised, pursued, and disallowed under § 1821(d) may still run into § 1821(j)'s constraints, even if that result is not "typical." *See id*.; *see also Koppenhoefer*, 2014 WL 4748490, at *5 (rejecting the plaintiff's claim that *Veluchamy* interpreted exhaustion of the § 1821(d) process as an exception to § 1821(j)).

In sum, no precedent saves UPB's counterclaim for equitable estoppel from § 1821(j)'s "sweeping ouster of courts' power to grant equitable remedies." *Courtney*, 485 F.3d at 948 (quoting *Freeman*, 56 F.3d at 1399). This Court grants the FDIC-R's motion to dismiss UPB's counterclaim.

### 3. Inadequate Pleading

As alternate grounds for this Court's rejection of UPB's counterclaim, UPB fails to adequately plead its equitable estoppel counterclaim. In Illinois, equitable estoppel requires plaintiffs to allege a knowing misrepresentation. *See In re*

---

[4] Indeed, *Freeman* explains: "In *many* cases, however, aggrieved parties will have opportunities to seek money damages or other relief" through § 1821(d), 56 F.3d at 1399 (emphasis added), and goes on to cite *National Trust for Historic Preservation in U.S. v. F.D.I.C.*, 21 F.3d 469, 472 (D.C. Cir. 1994) (Wald, J., concurring), which explicitly notes that parties can "generally bring a suit for *damages*, or seek *administrative* redress through the § 1821(d) *monetary claims* procedure," even when they cannot obtain injunctive relief, *id*. (emphasis added). Thus, neither *Veluchamy* nor any of the cases up the chain of citation proposes that § 1821(d) provides a run-around for § 1821(j).

*Scarlett Z.-D.*, 28 N.E.2d at 784–85. Here, UPB alleges only that Seaway failed to notify UPB of any desired change in—or objection to, or inability to comply with— the terms of the sale agreement. *See* [58] at 44–47. UPB's allegation that Seaway possessed the terms of the sale agreement permits the inference that Seaway had some knowledge of those terms, but this falls far short of demonstrating "fraud" or a "fraudulent or unjust effect." *In re Scarlett Z.-D.*, 28 N.E.2d at 785. UPB fails to plead sufficient factual content permitting the inference that Seaway "knew at the time the representations were made" that its representations about the portfolio purchase were false. *See id.*; *see also Iqbal*, 556 U.S. at 678.

Finally, under both state and federal law, parties cannot bring equitable estoppel claims against government entities absent "extraordinary circumstances." *See LaBonte v. United States*, 233 F.3d 1049, 1053 (7th Cir. 2000); *Bd. of Library Trs.*, 34 N.E.2d 602, 611 (Ill. App. Ct. 2015). Both state and federal law require plaintiffs to show an "affirmative act" *by the governmental entity* before such claims can proceed. *See Gutierrez v. Gonzales*, 458 F.3d 698, 691 (7th Cir. 2006); *Hometown Plaza, LLC v Ill. Gaming Bd.*, No. 1-16-2323, 2017 WL 3707249, at *9 (Ill. App. Ct. Aug. 24, 2017). UPB fails to plead any action taken by the FDIC-R that would support its estoppel claim, or to allege any other "extraordinary circumstances" justifying such a claim. *See LaBonte*, 233 F.3d at 1053.

Accordingly, UPB's counterclaim for equitable estoppel remains subject to dismissal under Rule 12(b)(6).

## B. Equitable Affirmative Defenses

This Court's analysis of UPB's equitable estoppel counterclaim also governs UPB's equitable estoppel affirmative defense. *See* 12 U.S.C. § 1821(j); *OneBeacon*, 883 F. Supp. 2d at 768 n.9 ("By its terms, section 1821(j) is not limited to 'claims' or 'actions.'"). Although phrased slightly differently, the estoppel defense seeks the same relief as UPB's counterclaim. *See* [58] at 41–42, 44–47. If anything, the relief sought by UPB's estoppel affirmative defense is phrased in even more clearly equitable terms: UPB claims that "Seaway should be estopped from denying the binding nature of the auction sale," and asks this Court to enforce the terms and conditions of sale and allow UPB to keep the deposits. *See id.* at 41–42. Such relief would clearly restrain or affect the FDIC-R's exercise of its power and function as receiver, which § 1821(j) does not permit. *See Courtney*, 485 F.3d at 948. Accordingly, this Court strikes UPB's first affirmative defense for estoppel.

With respect to UPB's second affirmative defense, labeled "failure to do equity," the same considerations apply. Although vague in its phrasing, UPB's second affirmative defense appears to assert a version of the "unclean hands" doctrine, which permits courts to deny equitable relief to parties who have themselves engaged in misconduct or acted in bad faith. *See Lock Realty Corp., IX v. U.S. Health, L.P.*, No. 3:06-cv-487RM, 2007 WL 2331059, at *3 (N.D. Ind. Aug. 10, 2007) (citing *Original Great Am. Chocolate Chip Cookie Co., Inc. v. River Valley Cookies, Ltd.*, 970 F.2d 273, 281 (7th Cir. 1992)); *see also Zahl v. Krupa*, 850 N.E.2d 304, 309 (Ill. App. Ct. 2006). Because the "unclean hands" doctrine is equitable in nature, *see Shondel v. McDermott*, 775 F.2d 859, 869 (7th Cir. 1985), it too falls

subject to § 1821(j)'s "sweeping ouster" of equitable relief, *Freeman*, 56 F.3d at 1399. Moreover, UPB seeks a judgment entered against the FDIC-R, even if this Court found that no enforceable agreement existed between UPB and Seaway. *See* [58] at 43. For the reasons discussed above, relief requiring this Court to enforce an agreement that the FDIC-R could have avoided if it *did* exist restrains the FDIC-R's powers and attempts to exert the type of power § 1821(j) was intended to prohibit.

Besides, it remains unclear what equitable relief this affirmative defense seeks to bar. The FDIC-R asserts two claims against UPB: one seeking a declaratory judgment that there was no meeting of the minds between UPB and Seaway—and thus no contract—and one for conversion. [1-1] at 19–20. Both seek the return of Seaway's deposits as the remedy. *Id.* at 20. Declaratory relief is not necessarily either equitable or legal in nature. *See, e.g.*, *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 515 (1959). Indeed, the Seventh Circuit has previously distinguished between equitable, monetary, and declaratory relief. *See, e.g.*, *Berger v. Xerox Corp. Ret. Income Guarantee Plan*, 338 F.3d 755, 763 (7th Cir. 2003); *see also Olson v. Jenkens & Gilchrist*, 461 F. Supp. 2d 710, 730 (N.D. Ill. 2006). Thus, UPB's defense may have no application here at all. In any event, this defense fails to provide "a short and plain statement" showing that the pleader is entitled to relief, and thus fails to fulfill the requirements of Rule 8. This Court grants the FDIC-R's motion to dismiss UPB's second affirmative defense.

## C.     Failure to State a Claim

UPB's third and final affirmative defense alleges that the FDIC-R fails to state a claim for conversion. [58] at 43–44. The FDIC-R contends that this

argument is not properly considered an affirmative defense, but should be raised on a motion to dismiss. [20] at 11. This Court agrees that UPB's failure-to-state a claim defense is improper as raised here.

Courts within this district are divided on whether to permit parties to raise "failure to state a claim" as an affirmative defense, rather than bringing it as a motion to dismiss under Rule 12(b)(6). *Compare Surface Shields, Inc. v. Poly-Tak Protection Sys., Inc.*, 213 F.R.D. 307, 308 (N.D. Ill. 2003) (striking the defendant's failure to state a claim affirmative defense as "clutter"), *with LaSalle Bank Nat'l Assoc. v. Paramont Props.*, 588 F. Supp. 2d 840, 860–61 (N.D. Ill. 2008) (noting the technical impropriety of such a defense but permitting the defendant to raise it). Courts have denied such defenses where the defendant previously raised the issue in other motions before the court. *See Imperial Const. Mgmt. Corp. v. Laborers' Int'l Union of N. Am., Local 96*, 818 F. Supp. 1179, 1186 (N.D. Ill. 1993).

Here, UPB raised precisely the same argument in state court, before the FDIC-R removed this case, as a motion to dismiss. *Compare* [78] at 23, *with* [58] at 43–44. Having reviewed the fully briefed motion and heard arguments, the state court denied UPB's motion to dismiss for failure to state a claim. *See* [78] at 74. This Court finds no basis for permitting UPB a second bite at the apple here. UPB's failure to state a claim defense raises no issue outside the FDIC-R's complaint, it was previously litigated, and it does not correctly state the requirements for a conversion claim. *See, e.g.*, *Bill Marek's The Competitive Edge, Inc. v. Mickelson Grp., Inc.*, 806 N.E.2d 280, 285 (Ill. App. Ct. 2004) (elements of conversion). Thus,

this affirmative defense is improperly pleaded and could not withstand a Rule 12(b)(6) challenge. *See Surface Shields*, 213 F.R.D. at 307–08. This Court grants the FDIC-R's motion to strike UPB's third affirmative defense.

## IV.     Conclusion

This Court grants the FDIC-R's motion to dismiss UPB's counterclaim and strike its affirmative defenses [60].

Dated: May 1, 2018

Entered:

John Robert Blakey
United States District Judge